IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:23CR09 (RCY) |
| | ) | |
| O'RYAN DARRELL JONES, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant O'Ryan Darrell Jones's Motion to Dismiss Count II of the Indictment (ECF No. 28). The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Crim. R. 47(J). For the reasons stated herein, the Court will deny the Motion to Dismiss (ECF No. 28).

## I. FACTUAL ALLEGATIONS

On February 21, 2023, a grand jury returned an Indictment (ECF No. 1) charging O'Ryan Darrell Jones ("Mr. Jones" or "the Defendant") with one count of False Statement in an Application for Passport, in violation of 18 U.S.C. § 1542, and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). As stated in the Indictment, the Government's trial brief, and the Defendant's trial brief, those charges are based upon the following alleged facts.

On or about March 24, 2021, Mr. Jones applied for a United States passport at the 25th Street U.S. Post Office in Newport News, submitting a Form DS-11 Application for a U.S. Passport in his own name, date of birth, social security number, and driver's license number. (Gov't Trial Brief 1, ECF No. 29; Def. Trial Brief 1, ECF No. 31.) In support of that application,

he provided a copy of his driver's license as proof of his identity and a copy of his birth certificate as proof of his U.S. citizenship.  (Gov't Trial Brief 1; Def. Trial Brief 1.)  Despite this, he was rejected for a passport because he failed to respond to requests for additional information in March and April 2021 and his child support payments were in arrears.  (Gov't Trial Brief 2.)

Mr. Jones, however, still wanted a passport.  (Gov't Trial Brief 2; Def. Trial Brief 1.)  To avoid being rejected again for outstanding child support payments, Jones fraudulently re-applied using the identity of his brother, "KLJ,"[1] putting KLJ's name, date of birth, Social Security number, and Virginia driver's license number on the Form DS-11 submitted on or about September 9, 2022.  (Gov't Trial Brief 2.)  In support of that second application, Mr. Jones tendered a physical copy of his brother's birth certificate as proof of U.S. citizenship and, as proof of his identity, a copy of a Virginia driver's license bearing KLJ's name and date of birth but Mr. Jones's own image and contact information.  (*Id.*)  Mr. Jones and his brother work together, giving Mr. Jones regular access to his brother's personal information.  (Def. Trial Brief 2.)

A subsequent investigation revealed that the Defendant caused the Department of Motor Vehicles to issue the fraudulent license used in the predicate passport crime by claiming to be his brother, KLJ.  (Gov't Trial Brief 2.)  Mr. Jones allegedly requested a replacement license on behalf of his brother on or about August 30, 2022, just ten days before he submitted his fraudulent passport application.  (*Id.*)  In that DMV application, the Defendant listed KLJ's name, date of birth, Social Security number, and Virginia driver's license number, though he provided his own phone number and a mailing address matching an apartment he leased.  (*Id.*)  He signed that application under penalty of perjury, certifying that the documents he provided were genuine, the

---

[1] As is standard practice, the Court will use the Defendant's brother's initials, rather than full name, in order to preserve his privacy.

information was true and correct, and that his appearance was a true and accurate representation of how he generally appeared in public. (*Id*.)

Mr. Jones's actions were discovered after officials from the U.S. Department of State flagged the high degree of similarity between the persons depicted in the photographs, as well as similarities in handwriting, biographical, and other information submitted as part of the 2021 and 2022 DS-11 forms. (*Id*. 2–3.) Mr. Jones voluntarily met with Special Agents around January 26, 2023, at which meeting he described, among other things, how he applied for a passport using KLJ's personal identifying information. (*Id*.)

## II. RELEVANT PROCEDURAL HISTORY

On February 21, 2023, a grand jury returned an Indictment charging Defendant Jones with one count of False Statement in an Application for Passport, in violation of 18 U.S.C. § 1542, and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). (ECF No. 1.) Defendant Jones had his initial appearance on March 29, 2023, and was arraigned on April 6, 2023. (ECF Nos. 6, 13.) After an April 10 status conference, the court found the case to be complex and set trial for July 10, 2023, outside of the speedy trial cutoff date. (ECF Nos. 17, 18, 19.)

On June 23, 2023, the Defendant filed his first Motion to Continue Trial, arguing that a recent Supreme Court ruling required that Count II of the Indictment be dismissed and stating that he planned to file a motion to dismiss shortly. (ECF No. 25.) The Government filed a memorandum opposing the Motion to Continue. (ECF No. 26.) On June 26, 2023, the Defendant filed the instant Motion to Dismiss Count II of the Indictment. (ECF No. 28.) On June 27, the Court denied the Defendant's Motion to Continue and ordered expedited briefing on the pending Motion to Dismiss. (ECF No. 30.) The Government responded to the Motion to Dismiss on July

3, 2023, and the Defendant replied on July 6.  (ECF Nos. 34, 43.)  Trial is currently set to begin

July 31, 2023.[2]

## III. LEGAL STANDARD

A criminal indictment must contain every essential element of the offenses charged, fairly

inform a defendant of the charges, and enable the defendant to plead double jeopardy as a defense

in a future prosecution for the same offenses.  *United States v. Perry*, 757 F.3d 166, 171 (4th Cir.

2014).  A defendant "may raise by pretrial motion any defense, objection, or request that the court

can determine without a trial on the merits," including "a defect in the indictment such as a failure

to state an offense."  Fed. R. Crim. P. 12(b)(1), 12b(3)(B).  When considering a motion to dismiss,

"the indictment allegations are presumed to be true, and the motion should not ordinarily be used

as a vehicle to test the sufficiency of the evidence behind the allegations."  *United States v. Lewis*,

262 F.Supp.3d 365, 368 (2017) (*quoting United States v. Treacy*, 677 F. App'x 869, 873 (4th Cir.

2017).  Thus, to challenge the sufficiency of an indictment, the defendant must demonstrate that

the allegations therein, even if true, would not state an offense.  *United States v. Thomas*, 367 F.3d

194, 197 (4th Cir. 2004).  The district court may dismiss an indictment before trial based upon "an

infirmity of law," but not based upon a determination of facts that will be developed at trial.  *Lewis*,

262 F.Supp.3d at 368.

## IV. ANALYSIS

The Aggravated Identity Theft Statute states in relevant part:

(1) In general—Whoever, during and in relation to any felony violation enumerated
in subsection (c), knowingly transfers, possesses, or uses, without lawful authority,
a means of identification of another person, shall in addition to the punishment
provided for such felony, be sentenced to a term of imprisonment of two years.

---

[2] The Court granted a second Motion to Continue after the Defendant retained new lead counsel the Thursday
before trial was originally set to commence (the following Monday).  (ECF No. 45.)

18 U.S.C. § 1028A(a) ("Offenses").  The predicate offenses listed in subsection (c) include, among

others, fraud relating to passports and visas.  18 U.S.C. § 1028A(c)(7).

The Defendant argues that his alleged conduct falls outside of the scope of the aggravated

identity theft statute, which has been narrowed by the U.S. Supreme Court's recent holding in

*Dubin v. United States*, 143 S. Ct. 1557; 599 U.S. __, 2023 WL 3872518 (Jun. 8, 2023).  Jones

asserts that the Government misuses the statute by using it in an effort to imprison Mr. Jones when

"the gravamen or crux of the offense alleged is not a theft of anyone's identity . . . and the named

victim of the case does not consider himself a victim of identity theft, much less a victim of

aggravated identity theft as alleged by the government."  (Mot. Dismiss 1.)  The Government

refutes Mr. Jones's reading of *Dubin*, claiming that the Defendant's fraudulent use of KLJ's means

of identification is at the heart of the criminal conduct here, not how he came into possession of

the identification nor whether KLJ considers himself a victim.  (Mem. Opp'n Mot. Dismiss 3, ECF

No. 34.)

### A. *Dubin v. United States*

The petitioner in *Dubin*, who helped manage a psychological services company, submitted

a Medicaid reimbursement claim for psychological testing that intentionally overstated the

qualifications of the employee who performed the evaluation.  *Dubin*, 143 S. Ct. at 1563.  This

falsehood inflated the amount of reimbursement, which is an act of overbilling.  *Id*.  Further, the

false bill included a patient's name and Medicaid number.  As a result, Dubin was charged with

and convicted of healthcare fraud pursuant to 18 U.S.C. § 1347 (for the inflated billing) and

aggravated identity theft under 18 U.S.C. 1028A(a)(1) (for the unlawful use of patient identifying

information).  *Id*.  The District Court and the Fifth Circuit, sitting en banc, affirmed Dubin's

conviction, and Dubin appealed to the Supreme Court.  *Id*. at 1563–64.

The Supreme Court vacated the conviction.  The Court held that, under § 1028A(a)(1), a defendant "uses" another person's means of identification "in relation to" a predicate offense when that use is at the crux of what makes the predicate conduct criminal.  *Id*. at 1573.  In that sense, "use" requires more than employment of another's means of identification in order to facilitate or further a predicate offense.  Instead, a conviction under § 1028A(a)(1) requires that the use of that identification have a genuine nexus to the predicate offense, requiring that the means of identification is used in a fraudulent or deceitful manner, with the deception "go[ing] to 'who' is involved, rather than just 'how' or 'when' services were provided."  *Id*. at 1568.  To further illustrate this distinction between *who* and *how*, the Court adopted the petitioner's hypothetical that differentiates between when personal information is at the crux of the criminality as opposed to when it is ancillary:

> Take an ambulance service that actually transported patients but inflated the number of miles driven.  The crux of this fraud was "how" services were rendered; the patients' names were part of the billing process, but ancillary to what made the conduct fraudulent.  In contrast, take the pharmacist who swipes information from the pharmacy's files and uses it to open a bank account in a patient's name.  That "misuse of th[e] means of identification" would be "integral to" what made the conduct fraudulent, because misrepresentation about who was involved was at the crux of the fraud.

*Id*. at 1565.  The Court also pointed out the distinction between "identity fraud" and "identity theft."  *Id*. at 1567.  "Identity Theft"—the title of the statute in question—has a focused meaning: "[T]he fraudulent appropriation and use of another person's identifying data or documents," or "[t]he unlawful taking and use of another person's identifying information for fraudulent purposes."  *Id*. at 1568.  Thus, identity theft occurs when a defendant "uses" the means of identification to defraud others.  *Id*.

6

**B. Application of *Dubin***

It is possible that, at trial, the Defendant could present evidence, and a jury could believe, that the use of his brother's means of identification was intended simply to secure the service of issuing a passport. However, it also plausible that the Government's narrative—that the crux of Mr. Jones's plan was to deceive the U.S. Department of State by impersonating another—could win the day.

In *Dubin*, "the crux of [the] petitioner's overbilling was inflating the value of services actually provided, while the patient's means of identification was an ancillary part of the Medicaid billing process." 143 S. Ct. at 1563. This stands in contrast to the facts in the present matter. Here, the government has sufficient evidence to argue that, in misappropriating his brother's means of identification, the Defendant sought either to impersonate him, or to use elements of his brother's identity in order to secure his own form of government identification that wrongfully incorporated his brother's information. This falls within the scope of the aggravated identity theft statute as described in *Dubin*, as both circumstances involve a deception as to "who" is receiving services, not just whether those services were received. Like *Dubin's* example involving the pharmacist's use of patient's information to open bank accounts under their names, Mr. Jones allegedly used his brother's information in the hopes of acquiring official documentation *as* KLJ. If the Government proves this, Mr. Jones's use of KLJ's identity was not ancillary to the underlying offense; it was fundamental.

In the Government's theory of the case, reflected in the indictment, "the use of the means of identification is at the crux of the underlying criminality;" here, that criminality is the predicate offense of making false statements in a passport application. *Id*. at 1568; Mem. Opp'n Mot. Dismiss 6. As acknowledged elsewhere in this Memorandum Opinion, the use of KLJ's name,

date of birth, social security number, and driver's license were each central to Mr. Jones's plan to secure alternative identification that intentionally misrepresented who he actually is. Mr. Jones is not alleged to have, for instance, used his brother's identity to fraudulently reassign and/or discharge the child support payments that impeded him getting a passport under his own name, and then to have proceeded to re-apply as himself. Instead, he allegedly assumed the identity of his brother wrongfully and without authorization, in order to be approved for a passport issued on the basis of that identity. For that reason, the Court holds that, as alleged, the Defendant's identity theft was at the crux of his underlying crime of providing a false statement in his application for a passport.

Mr. Jones also takes issue with the classification of his actions as "theft" and points out that KLJ does not consider himself a victim of identity theft. (Mot. Dismiss 3, 7.) Defendant points to language from *Dubin* explaining that, in writing § 1028A(a)(1), Congress likely intended for it to cover particularly serious forms of identity theft, such as theft "made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime." *Dubin*, 143 S. Ct. at 1568–69 (*quoting Carachuri-Rosendo v. Holder*, 560 U.S. 563, 574 (2010)). *Dubin* further describes how the verbs found in § 1028A, i.e., "transfer", "possess", and "use," relate to one another and together capture the various aspects of classic identity theft. *Id*. at 1569. Identity theft can occur both when someone steals personal information belonging to another and uses such information, and when one fraudulently appropriates and uses such information. "Identity theft thus intermingles aspects of theft and fraud, misappropriation and deceitful use. Section 1028A(a)(1)'s three verbs capture this complexity." *Id*. at 1570. Based on this, Defendant argues both that his actions were not the sort intended by the drafters of § 1028A

to be swept up by the statute, and that, because his brother does not feel victimized, he did not

commit the sort of theft contemplated by either the statute or *Dubin*.

The Court is unpersuaded by Defendant's arguments and interpretation of *Dubin*.  In

describing identity theft, the Supreme Court in *Dubin* neither states nor implies that the defendant

must never have had legitimate access to the misappropriated identity.  Rather, *Dubin* established

that any of § 1028A's three modalities of conduct—transfer, possession, and use—may constitute

a violation, and that the "use" modality requires deceit as to who is the recipient of the benefit or

service.  In fact, the *Dubin* opinion acknowledges that the act of stealing an identity can "include

situations where [it] was initially lawfully acquired."  *Id*. at 1568 n.6.  As the Government points

out, many cases of identity theft involve "individuals who have lawful access to an individual's

means of identification but then go on to misuse those means in a fraudulent way . . . ."  (Mem.

Opp'n Mot. Dismiss 7.)  And in this case, the allegations do fit within the *Dubin* "serious identity

theft" framework, as Mr. Jones is alleged to have taken his brother's identity with "the intent to

commit another crime," *Dubin*, 143 S. Ct. at 1568–69, to wit:  making a false statement in

connection with his passport application.

Moreover, the Fourth Circuit has clarified that permission to hold or use someone's means

of identification does not give the holder lawful authority to use it in the commission of a crime or

fraud.  *See United States v. Otuya*, 720 F.3d 183, 189 (4th Cir. 2013) ("[O]ne does not have 'lawful

authority' to consent to the commission of an unlawful act.  Nor does a 'means of identification'

have to be illicitly procured for it to be used 'without lawful authority.'").  Even if Mr. Jones can

show that his brother handed him the means of identification allegedly used in the offense, i.e.,

granted him lawful access to the documents, the Government's allegation that Mr. Jones lacked

lawful authority to misuse those means of identification is sufficient for a §1028A(a)(1) indictment to survive dismissal.

Further, nowhere in *Dubin* or in related opinions is there an implication that the rightful owner of the identity must consider himself a victim in order for the defendant's conduct to constitute a violation of the statute. In *Flores-Figueroa v. United States*, the Supreme Court held that the government must simply "show that the defendant knew that the means of identification at issue belonged to another person" to sustain a conviction under § 1028A(a)(1). 556 U.S. 646, 657 (2009). There is no required element describing the state of mind of the alleged victim. So long as the victim is a real person as defined by *Flores-Figueroa*, the law does not require that this other person be aware of this misuse of their identity, experience harm from it, or even be alive during its commission. *See United States v. George*, 946 F.3d 643, 649 (4th Cir. 2020) (holding that § 1028A(a)(1) prohibits the unauthorized use of the means of identification of both living and deceased victims). And, as mentioned previously, even if the true holder of the identity consents or otherwise does not object to the use of their identifying information, such erstwhile consent does not render the use any less unlawful. *Otuya*, 720 F.3d at 189 (affirming a conviction under §1028A(a)(1) even though co-conspirator-victim consented to the deceitful use of his identification).

In short, the facts alleged in this case with respect to Count II of the Indictment do comply with the more exacting standards outlined in *Dubin v. United States*. Mr. Jones's indicted conduct, if proven true, involved the use of another's means of identification in a manner that perpetrated fraud or deceit about Mr. Jones's own identity. This is the sort of conduct contemplated by § 1028A(a), even after *Dubin's* prescribed narrower interpretation. As such, the Court finds that

Count II of the Indictment is free of defect and supported by allegations sufficient to state an

offense.

## V. CONCLUSION

For the reasons set forth above, the Court will deny Defendant O'Ryan Darrell Jones's

Motion to Dismiss Count II of the Indictment (ECF No. 28).  An appropriate Order will accompany

this Memorandum Opinion.

/s/ _____

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: July 20, 2023